4-1765 Patrick Regan against Secretary of the Navy, Mr. Crout. Good afternoon, Your Honors, may it please the Court. My name is Vincent Proviates for the Plaintiff Appellant Patrick Regan. At this time, I'm requesting three minutes for rebuttal. Granted. Thank you, Your Honors. We are here today to request that this Court reverse the decision of the District Court in finding that Mr. Regan's complaint seeking relief under the Administrative Procedures Act was untimely for occurring after the six-year statute of limitations. Very briefly, Mr. Regan attended Lake Erie College of Osteopathic Medicine. Let me ask you a question. I read somewhere here, I don't remember where, that he is actually practicing medicine now, not for the Navy and the circumstances that he had contemplated when he entered the service period, but that he is practicing medicine as a doctor now, as a civilian, I assume. As a civilian. Yes, Your Honor. What would prevent him from practicing medicine in the military, with the Navy? Not as a Navy doctor, but for the Navy? Unfortunately, Your Honor, between the time that he would have been serving, following his service under the Navy, and now his circumstances have changed, he would not be able to financially support himself, he believes, at this time were he not to be practicing private medicine. And so, based on that... His expenses are such that he needs to make more money than the Navy would be paying him. Yes, Your Honor. Okay. So did he exhaust his administrative remedies related to the medical fitness before he was actually discharged? In other words, he sought, he fought being discharged initially, said he was medically fit to continue, is that correct? Yes, Your Honor. So he lost that, and then he was involuntarily discharged honorably? Yes, Your Honor. And he then began, he also made at least a payment in connection with the recoupment of the monies that they were seeking? Yes, Your Honor. And obviously, he did that because he did not want to, you know, come into any other legal issues that would come from... So is the primary issue now in connection with, I mean, it looks like he kept filing a lot of, and I guess it's a mishmash of, you know, people in the DOD network. But it seems like, or elsewhere, he filed not before the Navy for the most part, but filed so many other places, and he kept filing in the wrong place. He filed like the Department of Treasury, he filed for some other DOD entity that really wasn't controlled by the Navy. What happened? Well, Your Honor, you know, Mr. Regan is not an attorney. Did he get an attorney at all? He got an attorney. He picked up an attorney through us, VeriLaw, in 2019, following his wage garnishment hearing request denial. What ended up happening here was that following his discharge from 2011 all the way through 2020, Mr. Regan went through many examples, as you said, of trying to have this debt absolved. This is because he believed, well, this is because under the contract for the Armed Forces Health Professional Scholarship Program at issue here, he was required, as you say, to exhaust all administrative remedies. And these instances of him filing the numerous appeals that he did consistently through 2011 up and through 2020 are him following the requirements of the contract. Federal courts have made clear that a failure to exhaust these administrative remedies will result in the court lacking subject matter jurisdiction. Here, that is determined. What we're requesting here is that this be overturned. The district court's finding that the 2011 decision for him. 2021. We're requesting that 2021 be the final decision date. Who made that decision in 2021? That was. That was the BCNR, right? Yes, Your Honor. And they were following up on an advisory opinion of the BMS? Yes, Your Honor. And why was it only advisory, the BMS's opinion? I think that's just the way it works. I can't speak for the Navy as to why they issued the advisory opinion. When did he seek the relief in the BMS or from the BMS? He sought that in 2019 through very law under the, as part of his request for removal of the garnishment of his wages. All right. But he knew he owed the debt way back in October of 2016, right? Because he applied for a waiver of indebtedness. It was denied. So he knew he owed the debt because you don't seek a waiver if you don't know you have a debt, right? Yes, Your Honor. However, he believes that that 2016 waiver that he was applying for, it was him trying to, continuing to try and exhaust his remedies. He did not realize that anything was going to occur because the Navy did not inform him of any decision to review this wage garnishment. The only time he found out was in April of 2017 when his tax return was taken. Before you get to 2017, when was that denied, the waiver he applied for? Well, that's the issue here. It was late 2016. We'll answer the question. It was late 2016. Is that right? Correct, Your Honor. And then he made the first payment. However, he never received notice that he was not going to get a hearing. And so in order to make... The waiver was denied. He made the payment. After it was denied, you're saying he never received notice that he wasn't going to get a hearing. Well, he heard, as he heard nothing, Your Honor, and like I said, he didn't want to run afoul of any other legal issues.  You file a lawsuit to protect yourself? Right. And stop the clock from running. Right. Well, again, he believes that he was still in the process of taking the administrative remedies that were required under the contract. Which were? Hmm? Which were? What were the administrative remedies required under the contract? So that's controlled by contract in paragraph 18. It states, should any dispute arise over the terms or conditions of this service agreement, or if I hereafter seek discharge from military service or release from ADSO, I acknowledge and agree to exhaust my available administrative remedies prior to seeking judicial review. Exhaustion from the United States Navy Board for the correction of military records, remedy 10 U.S.C. 1552, shall be mandatory in all cases except with respect to applications for classifications of conscientious objectors. That's not who he applied for the waiver for, was it? I'm sorry? He didn't apply with the Board of, I can't keep all these letters straight, the Navy Board. He didn't apply to them for the waiver, did he? Who did he apply to for the waiver? He applied for the waiver to the. Department of Treasury. Yes. Department of Treasury. It's not even a defendant in this case. I mean, put another way. Let's assume, because we have no reason not to, that your client, you said he's not a lawyer. Let's assume he was acting in good faith. Let's give him that. It's also possible that while he was acting in good faith, he blew the statute of limitations. Isn't that possible? Well, Your Honor, part of the decision under the, part of the factors that can lead to equitable tolling. Okay, hold on. Don't go back to equitable tolling. We can talk about it. I'd like to talk about equitable tolling, but we only get to equitable tolling if he blew the statute of limitations. And if you're saying he did unintentionally blow the statute of limitations, then we can just move on and focus on equitable tolling. Is that what you want to do, or do you have an argument that he didn't blow the statute of limitations? We believe that he didn't blow the statute of limitations because, to the best of his knowledge, he was continuing to abide by the contract, and it was the contract that decided what the final decision would be from. All right, that's very helpful. We're trying to figure out what the final agency action is here, right? Because the six-year statute begins to run when there's the final agency action. Yes, Your Honor. It looks at first blush, at least, that the final agency action here is when the Navy, in June of 2015, issues your client, quote, an involuntary separation order. That sounds final. That's, sorry, you're out of the Navy. Now, he did seek a waiver of that in October 2016, but the waiver was denied. And he didn't seek the waiver, as my colleagues mentioned, he didn't seek the waiver from the Navy. He sought the waiver from Treasury, which was trying to collect the debt, right? Yes, Your Honor. So tell us why that event in June of 2015 is not the final agency action. What case law or statute or contract, what do you have to tell us that something that looks at first blush, like final agency action, is not final agency action? Well, the unfortunate thing, and this is pointed out in the cases cited by the Navy as well, that this area of the law isn't crisp at all. It is entirely, you know, Well, we're going to try to make it crisp. Yes, Your Honor. And that's what we got to get to the bottom of what the final agency action is. And so tell us why that what looks to me at first blush could be wrong. First blush is often not correct. But at first blush, the Navy's determination that he is involuntarily separated looks like final agency action. And I think you need to convince me anyway as to why that's wrong. Him plus one more of his colleagues. There's not much you can go on in connection with 2015 or 2016. I mean, first of all, what did he really want? He wanted to get not having to pay back the $300,000. Isn't that primarily what he wanted? Yes, Your Honor. And then the only so if the statute of limitations is back then, then you bringing a complaint in 2023 is too late. But it there is a 2019 action is decided eventually in 2021. And the it looks like what the Navy did in 2021. It says this is the department. This is the B.C.N.R. Although your application was not filed in a timely manner. The board found that in the interest of justice, the way the statute of limitations and consider your case on the merits. And. That is what you're filing the complaint for in 2023. Is that correct? Yes, Your Honor. So then the question becomes, was the 2023 complaint timely under the six year statute of limitations? Under 24, 28 U.S.C. 2401A. Yes, Your Honor. OK. And if it was not, then we wouldn't be alternative. We would seek. And is there any case from this circuit that helps you? As I said, Your Honor, unfortunately, the area of law is not. Does a Daugherty case help you? From 1995, I believe. When you get a question like that. Or 1986. And the answer is always yes. Yes. But are you familiar with a Daugherty case? No, you're on your own there. Because if you're not, then you're missing something that could be helpful to you. Understood, Your Honor. I had focused my attention on countering the usage of Ayers. I believe that that was the Ayers case that is relied upon, as that is what we believe to be bad precedent to be set in stone in the district. We believe that based on all of his actions, seeking what he believed was administrative remedy under the contract, that that continued to toll what the final date would be. And in the alternative. Where Daugherty involved many damages, so you may not be losing too much by not being familiar with that case. I mean, you keep going back and looking at the 2015 decision on discharge and the 2016 denial of the waiver of the recoupment of $300,000. But if the 2015 discharge is a final action, is it preserved, you're saying, by the discovery rule? But he has to know that he wasn't injured until later on. But in terms, that rule doesn't help him here. He's known of his injury since at least 2016. And, in fact, he made a payment in 2016. So that can help you. I mean, the only possibility you have is the 2021 decision. Can he file a complaint in 2023 in as much as the BCNR in 2021 said any previous statute of limitations that applied here to four were going to waive? And that's pretty much what happened in the Daugherty case. Understood, Your Honor. In conclusion, given his. But for a gentry conclusion, respond to the BCNR in 2021 where it appears that the statute of limitations was waived. Part of, again, if the date of the final decision is not in our favor in the alternative, we're seeking equitable tolling. And one of the factors of equitable tolling is plaintiff won't be punished if he is harmed, if he files in the wrong jurisdiction. And so the district court stated in its opinion that that was not possible here. Equitable tolling would allow that. Given the nature of his actions and the way that he was led on by the U.S. Navy, believing that everything would be resolved. How are you led on when someone says you owe us three hundred thousand dollars and now we've got a collection agency trying to get the debt? That doesn't sound like being led on. Unless you're saying the BCNR's action in 2021 waiving, purporting to waive the statute, that was leading him on. But that doesn't seem to be what you're arguing. Well, in our brief that we cited, the language used from beginning with the July 24th, 2019 notice of intent to initiate administrative wage guard commission proceedings. Here, Mr. Regan was given language indicating that he could request a hearing regarding the validity and existence of the debt by completing, signing, mailing the enclosed request for hearing form to the address listed below. September 23rd, 2020. You may appeal the determination of the defense office hearings and appeal DOA. Appeals must be made in writing and noted in DODI 1340. Twenty three paragraph eight to August 12th, the correction denial letter. You were entitled to have the board reconsider its decision upon submission of new matters, which would require you to complete and submit new DD form 149. These series of letters to Mr. Regan indicate that administrative review was still ongoing. And so based on that, we would ask that the district court's decision be remanded and the case to allow to continue. Thank you. Thank you. May it please the court. Laura Irwin from the U.S. Attorney's Office in the Western District on behalf of the United States Navy. I'd like to start, Judge Ambrose, with your question about what. Isn't it really just this DCNR decision from 2021 that would be the only thing that would allow Mr. Regan to have a claim that the district court could adjudicate or that he could. There would be a decision. Does a complaint in 2023. Can it, in effect, challenge that DCNR decision? Correct. And our view is perhaps. And the reason why the answer is perhaps and actually no is because. Which is perhaps or no. I'll go with no. I don't want to cause you any. The answer is no. And here's why. Mr. Regan has never argued that that is the determinative filing that he made or the term of date in his opening brief. He relied on the DFAS advisory opinion. That was on page 11 of his brief. Again, I think we all have recognized anything he did with DFAS or Treasury is not the Navy is not the Navy. That was his position in his opening brief and our response at footnote 18. We suggested that perhaps that action with the BCNR under some circumstances might have been his saving grace in this case. And in the reply brief, there's no response to that. He just he talks about other things. So this would be the first time an argument. All right. So there's a forfeiture problem. Exactly. And the claim would be that if you look at the app, appendix 114 to 116 or 118, that somehow implicitly that he brings these things into play. Are you referring to paragraph 18 of the service agreement? Your honor? It was the brief in opposition to the motion to dismiss before the district court. Right. Right. Exactly. So that's our position is that that would be the only thing he has now. That's why that's why he was said, perhaps. Exactly. Let's assume it's not a forfeiture for a minute. I'm trying to figure out how this works. So 2015, the decision by the Navy to separate him. That's final, right? That's our position. That's your position. But this issue of the BCNR allows for a possibility that he's pursuing administrative remedies. Correct? Well, if you're referring to paragraph 18 of the service agreement, we have a different view on that. But I think what you're saying is, is that we believe that he had a permissive right to bring another action to the BCNR. And they they waive the statute of limitations that they're allowed to do that. And from that, he could take an action in district court. He just has not argued that. Right. I understand that. But I'm trying to see how this works in practice. Let's just let's assume that the date is final on June 15, June of 2015. Let's say that's when the clock starts ticking. And let's assume for a minute for five years up to June of 2020, he does nothing. So he's he's lost five years on the statute. Correct. And then let's assume he seeks administrative review, the BMS, the BCNR. And he does that for two years. And then after that two year period where he loses in the BCNR, he waits a year and a day to file suit. Is it your argument that he's out of court because the five years that he lost initially and then there's a break while he's exhausting for two years that don't count? But then he's lost a year and a day. So we're now at six years and a day. He's out of court. Is that how this works? I think that's correct, Your Honor. Keeping in mind that I did not look at that precise issue because we don't have that fact pattern. I understand that. Yeah. All right. I'm just trying to figure out how this works. Because as your friend on the other side said, we've never seen at least I've never seen a case like this. It is an alphabet soup. That's for sure. All right. So if that's the way the statute works, then take that same idea and map it onto the actual facts of this case. Where are we? Well, where we are, Your Honor, is first of all, I think we should start with paragraph 18 of the service agreement, because that's Mr. Reagan's argument as to what drove his behavior. And that paragraph provides that he has to seek review through the BCNR. So it's a preliminary matter. And I have more comments about the paragraph itself. But he says, I was out there doing all this other exhaustion because paragraph 18 told me to. That's not accurate. That was a mistake because he was fooling around with Treasury. Right. I mean, there can be no mistake that that's what this says. I mean, it says BCNR, which he didn't do. Those aren't parties to our litigation. So they are no moment to this litigation. All right. So he doesn't get any credit for the time he's spending in the wrong arena. Right. When does he start to get some credit as a timing matter then? Well, when he files an action with the BCNR. Which happened when? I believe it was, he filed in August of 2020. Was it August of 2020? Okay. Yeah. All right. So he's lost over five years at this point. And then from August of 2020 until when he's dealing with the BCNR? He gets a final decision from the BCNR in August 21 of 2021. And he waits until 2023 to file suit. So if the statute works the way we talked about hypothetically, and he doesn't have a forfeiture problem, I know that you argue he does. He's still out of court because he lost over five years before he went into the right arena, the BCNR. And then from the time that he got a final decision from the BCNR, he waited more than a year. Correct. I think that would be correct, Your Honor. Okay. So those are two independent ways we could decide this case in your favor. Correct. Is there a third way you want us to consider to decide in your favor? Not that I can think of off the top of my head. The only issue I have is procedural. When the BCNR in 2021 denied the, in effect, the claim for recruitment. I mean, it starts off like, would you clear up my military records? But in essence, he's asking, I don't want to pay the remainder of the $300,000. And the BCNR says, although your application was not filed in a timely manner, the board found it in the interest of justice to waive the statute of limitations and consider your case on its merits. That's correct. And then, so then they filed this complaint in 2023. And maybe implicitly, because not explicitly, he's challenging this portion, or the BCNR decision in 2021. But based on what your opposing counsel said during his presentation, he may be focusing on the wrong issues. And maybe somehow sort of slipped in, maybe perhaps there's something relating to the 2021 decision. So it's a mess.  How do we know paragraph 18 even applies to these types of debts? Well, actually, that's, taking the full text of it, it does not. The last sentence says, I will remain subject to active duty or transfer orders while exhausting administrative remedies. He's not subject to active duty. He was told he wasn't eligible for active duty. Exactly. So why isn't there a third way you win the case? Why were you conceding? I'm puzzled why you didn't come out front and say that paragraph 18 is a red herring here. This is a gentleman who, due to an unfortunate medical condition, was not eligible for active duty. Correct. And since he wasn't eligible for active duty from the get-go, the requirement under paragraph 18 for active duty service members to exhaust administrative remedies does not apply to him. Well, it no longer applies to him. Our point is, this might be going down a rabbit hole, but the active duty service obligation, the ADSO, is set up in the service agreement. And it required him to do some reserve duty as well as active duty. Four years of each. Right. So our position is, is this paragraph would apply any time he's within that period. He's no longer within that period. But he never was. I mean, he only was while he was in school.  From the time he was diagnosed with the condition and adjudicated to be ineligible for active duty service, why doesn't it end then when he sent the letter saying, we're sorry, but we're involuntarily separating you. We're giving you an honorable discharge.  Due to medical. And that's June of 2015. Exactly. So once that happens in June of 2015, how could the exhaustion requirement of paragraph 18 ever apply to someone who has been adjudicated to be discharged? I couldn't have said it better myself. That's exactly our position, is that it doesn't apply to him. Did you argue that in the briefs? I don't remember seeing that. Probably not as well as you just did, but we did take the position that it does apply to someone who's 18. In active duty. So under an active duty service agreement. It says any dispute under the agreement. That's in the last sentence that we're discussing. But the fact that he's not in the military, is that also the fact that the dispute here is still a dispute that arose under the service agreement? Well, that's a good point, Judge McGee. Because I think what he's really bringing is, at least in this action that he has in the district court, is a breach of contract claim. Which only lies in the Court of Federal Claims. He is saying you breached various, he doesn't specify which provisions of the contract have been breached. But he is saying you breached. The service agreement. The service agreement by making me pay back my debt to you. And there is a provision, I believe it's in paragraph 15 or 16. One. In paragraph 8 is one. Paragraphs 15 and 16 talk about, as well as paragraph 8, that the decision to waive the obligation is left to the discretion of the Secretary of the Navy. And that's what he's saying, is that you breached by not exercising your discretion in my favor. And again, that claim doesn't lie in this district. Is the BCNR decision in 2021 a separate final agency action? I believe that it is. That's the case that doesn't already apply spot on. That if you waive a statute of limitations, then you can go ahead and decide. Then the question becomes after that, did his complaint in 2023 sufficiently challenge the 2021 decision with respect to the recoupment? I see your point, Judge Amber. I would go back to the point that Judge Hardiman made about you add up the various times of delay. What does the we waive the statute of limitations mean in 2021? I think they're waiving the statute of limitations that the board has of three years to bring a claim to the board. They're saying he should have brought it in 2019. Yeah. 2016 to 2019. Yeah. That's in a footnote in our brief, Your Honor. OK. But again, our position is, is that he has completely forfeited this argument because he never raised it. And there may be good reasons for that. Because that claim to the board is only you shouldn't make me pay my debt when his complaint contains a plethora of complaints about interest rates and things like that. So they're not coextensive. And that may be why he made that choice. I guess I'm still puzzled as to why the administrative remedy of records correction has anything to do with this case. This is a debt collection case. What record is he trying to get corrected? The record that indicated that he was being discharged is not being physically qualified and therefore was responsible for his debt. But that's different from the recoupment. Right. Right. Exactly. At least in terms of practical reality. Exactly. It looks like what he really wanted was, I don't want to have to pay the remainder of the $300,000. Yes. And he makes that statement in his reply brief. But unfortunately, you can't retroactively and just by wishes change your complaint. And he did ask to modify his complaint and amend his complaint to the magistrate judge. That was denied. He did not appeal that. So we can't kind of somehow massage what he wrote in his complaint to now be, I just want to sue the Navy for this one issue. If the record was corrected by the $300,000 minus payment one dollar obligation was still there, we would still be here. And that's not what the problem is. The money would still be here. We'd still be seeing relief from the debt. Correct. Even if the records were corrected. Correct. The problem isn't the records. Yes. You're correct, Your Honor. I would just like to clarify one perhaps missed comment. I'm still trying to figure out. Let's assume the statute is three years. But if you said, in response to my question, the 2021 decision was a final agency action, then you have under the APA, three or six years, whatever it is, it doesn't make any difference because he filed within two years. So why isn't that enough procedurally to say that the case isn't over and he either wins or loses on the merits? I think that would be correct, Your Honor. We, again, did not brief that issue. But I think that that would override Judge Hardiman's concern or question about adding up different blocks of time. Because if it is a final agency decision and there's really no indication that it's not, here's the problem. I initially did think that it was a non-final agency action because the question he raises is the same question he has raised to every other agency. But I realized that he had never presented that question to the Board of Correction of Naval Records. He started to do that back in... And then gave up the ghost for a while. Yes. In 2015, or June of 2015, he saw... Claiming that he was busy in 2016. Exactly. Now, I don't know if that would bear it. I don't think it mattered because of what I asked before. Because that's not what the real problem is. That's not what the remedy he's seeking would go to with the record. I'm not sure I follow you. Yeah, I'm not sure why the correction of the record from all the hearings. Excuse me, that's the right hearing. Because the real concern here on the part of Mr. Reagan is not the record necessarily, but the fact that he finished a $1,000 obligation arising under the service agreement.  It can't be the law that when you have six years to file a case, if you wait five years and 11 months, and then you start exhausting your administrative remedies, and two years later your administrative remedies are gone, you lose, then you get another six years to file. Right, exactly. Otherwise, you could unilaterally just keep extending the statute of limitations every time the agency said no to you. Similarly, you could do that by, if you could just keep filing before the BCNR, and renew what is the final agency. But the BCNR doesn't have to waive the statute of limitations. Exactly, they don't. But they did in 2021, and you're saying that that was a final agency action, and so under the APA you have to have the ability to somehow contest that within a certain period of time. He filed something that was off on another area of disagreement, and maybe on the pages we talked about, Appendix 114 to 118 may have implicitly brought up the whole point relating to what was covered by the BCNR decision in 2021. Is that where we are? I think that is where we are, Your Honor. When they said we waived the statute of limitations, were they talking about the three-year or the six-year? My understanding was the three-year.  The three-year. And I just, I realize my time is up, but I would like to address. Does that make any difference? Because if it's a final agency action, you still have the right under the APA. I guess the argument against what I'm just, does the service agreement trump everything? I don't think it can. I don't think it can, and I don't think there's a provision in there limiting his time to do that, imposing its own statute. At least you're helping us muddle our way through this. Yeah, it's very helpful. Okay. I just wanted to address Judge McKee's first question, which was could Mr. Regan have fulfilled his obligation to the United States Navy by acting as a civilian physician? And the answer to that is yes. You offered him that option, actually. We did, and it's actually in the service agreement, and I appreciate the response that was given, but I think that the court should know that that option remains open to Mr. Regan. It's a process that's not guaranteed, but he would be made aware of what positions are available as a civilian physician. He would know where he's going. He would know what his salary is. It would be a four-year commitment if he was accepted into it. The Navy desperately needs physicians. They desperately need general surgeons like Dr. Regan, and we just want to leave the court with making sure that you're clear that that's always been an option available to him. Any other questions? Yeah, Judge Ambrose, no, at the end of the argument, Judge Ambrose would like a transcript of this proceeding, so I'd ask the government to take care of that. The whole proceeding is on video and audio anyway, but sometimes we like to read it, so if you could do that, we'd appreciate it. When you say the government, you want us to bear the cost? Yes, please. Yes, please. Thank you. With that, we would ask the court. Look at his percentage of the taxes that he's paying as his prorated cost of the transcript. Thank you. We would ask that the court affirm. Thank you. Let's hear a rebuttal. Thank you, Your Honors. Two and a half points. Is there any possible, let's just, we've been talking procedurally so far. Is there any possible way he can win on being successful on the recoupment of the remaining portion of the $300,000 he owes the Navy? Yes, Your Honor. Okay. I'm here, I'm listening, but I can't figure it out. So what we're going to argue here is that, and the whole reason that he has been trying to get his record corrected here, which part and parcel is primarily. What would the record say once it's corrected? The record would say that he was involuntarily discharged due to a situation out of his control. He was diagnosed with an autoimmune disease, mitosis, that the Navy. And where in the agreement is the Navy not allowed to discharge someone with an illness through no fault of their own? In the Navy's policies and procedures, specifically to request remission of indebtedness. This is in the contract? This is Navy policy. I'm asking you where it's in the contract. It's in the contract. I believe it is. Yes, Your Honor. Let me show you the word, because I just turned off my computer. I don't have the agreement in front of me anymore. But I do remember seeing in there, it specifically said that if he's unable to complete the obligation, he would still owe the $300,000. And it becomes, I don't think it's as incapacitated, but it does say I think incapable. He's still obligated to pay the $300,000. Yes, Your Honor. Specifically, the language of paragraph 5 of those policies and procedures say, as a general rule, repayment action will not be pursued in situations in which the member's inability to fulfill specified service conditions related to pay or benefit is due to circumstances determined reasonably beyond the member's control. Members relying upon. And so that would be the basis, you know, should this case be remanded in which he has relief from this indebtedness. All right. Where, please respond to Ms. Irwin's point that nowhere in this appeal did you argue that the statute of limitations was told because of the BCNR action. Where did you argue that? Even today, we're tracking it because that ball is thrown to you and you just let it go by you. The follow-up to that question was, in conclusion, you specifically asked about the BNCR. Yes. I mean, I know you've made equitable tolling arguments. You've got that in here. But the point that Judge Amberlatched on to, where did you argue that? That the six-year statute of limitations begins to run when the BCNR made its decision? I would, we implicitly made that argument by our insistence that the actions that Mr. Regan took from 2011 all the way through 2019 were all attempts to exhaust his administrative remedies as required by the contract, paragraph 18, which does apply here because at the end of the day, what he's seeking is a removal of the debt that is a result of this agreement that paragraph 18 is part of. All right, so it wasn't explicitly argued, but it was implicitly argued because you pointed out that he was doing the best he could, recognizing he's not a lawyer. Yes, Your Honor. Is there another way of looking at this that doesn't, I'm going to forewarn, this is not going to help you. Maybe the issue isn't so much statute of limitations. Maybe the issue is that when you started the process in 2015 to request a remission of indebtedness, but never completed that process, and ultimately you started paying in 2016 payments, you forfeited any argument that you had. Forget statute of limitations. Whatever argument you may have had that somehow the recoupment of the remaining portion of the $300,000 shouldn't be, the process that you began, you stopped. And the only reason you stopped was you claimed that you were busy with other things. Isn't that a forfeiture? And if so, that's game, set, and match. No, Your Honor. Statute of limitations isn't important any longer. No, Your Honor. How did he not forfeit in 2015, 2016 by not following up on his request for remission of the indebtedness? Because when he submitted the 2016 request for the waiver, he was expecting to hear back from the Navy anything. But he was expecting to hear back. He did hear back, and they denied in 2016 the waiver, right? And he began to make payments. So if it's not a forfeiture, it's like an acceptance of a decision against him. And that, once again, I don't see any conceivable way he can win on the merits. Your Honor, I would disagree with that. But you've got to give me a reason. That reason is, if he was, when he was denied the 2016 hearing, he would have had to have found out after the fact. He was not aware that anything regarding that 2016 request had been either taken or ignored until he realized on April 28th of 2017 that his tax return had been taken in relation to this debt that is said that he owes. Because the Navy did not make any kind of indication as to what was going to happen after he made that 2016 request, he was left in the dark as to what was going to happen. And he didn't have counsel until 2019. Correct, Your Honor. And he filed before the wrong forum. I mean, but I still am struggling to find out any way he could possibly win, even if he has the ability to challenge, even if you challenge front and center the BCNR decision of 2021 by a complaint that, assume it was filed timely in 2023, how on the merits he can possibly win? Well, Your Honor, I believe that our argument stemming from his medical condition, which prevented him from serving, is the basis for our relief on this. It is clearly within the Navy's policy to make exceptions to debt collection for situations. But he knew that people were coming after him and he was still filing in the wrong. I mean, didn't get an attorney, didn't file in the wrong department. One could understand that initially, but it continued on. Anyway, I think we've made our point. I just, I don't see, I don't see an explicit challenge to the BCNR decision in 2023. Perhaps there's an implicit challenge, but even if there is an implicit challenge that is accepted as timely, I still don't see how you can win. So. Understood, Your Honor. Okay, thank you, counsel. The court will take the matter under advisement. Thank you. The court stands adjourned until September 23rd at 9 p.m. Thank you. Thank you. Thank you.